Common Pleas Court of Cuyahoga County.

THE SELTZER ROUND CO. v. JOSEPH M. LOEHR, ET AL.

Decided July 20, 1932.

*Grossman & Grossman*, for plaintiff, The Seltzer Round Company and defendant, N. A. Seltzer Sales Organization, Inc.

*Edwin S. Wertz* and *Ernest Cornell*, for defendant cross-petitioners Loehrs.

*H. J. Epstein* for defendant, The London & Lancashire Indemnity Company.

GEORGE P. BAER, J.

The original action was a suit brought by the *Seltzer Round Company* v. *Joseph M. Loehr et al* to foreclose a mortgage upon certain lots sold to Loehr by the Seltzer Round Company through its selling agent, The N. A. Seltzer Sales Organization, Inc. Loehr, after answering, filed a cross-petition in which he sought affirmative relief against the Seltzer Round Company as principal and the N. A. Seltzer Sales Organization, Inc., as agent, on account of misrepresentation and fraud, and joined as party defendant, the London & Lancashire Indemnity Company, which company executed and filed a bond to the State of Ohio in the sum of $1,000, as surety, for the sales company under the provisions of Section 6373-35, General Code of Ohio, which section is included in the so-called Brokers Real Estate Law, embraced in Sections 6373-25 to 6373-51, inclusive, General Code.

The cross-petitioner, Loehr, besides alleging fraud and misrepresentation, asked for rescission and cancellation of the deed, note and mortgage covering the lots so sold

to him on the ground of fraud in the sale. By reason of the fact that there was an exchange of property by Loehr with the Seltzer Round Company as part consideration of the purchase price, Loehr having conveyed to the Seltzer Round Company a property of the agreed value of $12,500 and the Seltzer Round Company having disposed of said property, and there could be no restoration in kind to Loehr, he asked for damages in the sum of $18,000.

The cross petition of Loehr contained many allegations of misrepresentation *"in futuro"* and expressions of opinion which are not actionable ordinarily under the common law. The contention of the cross-petitioner Loehr is that these allegations are actionable and should remain in the petition because the so-called real estate brokers act is a law enacted for the protection of the public and has modified and supplemented the common law remedy of fraud and deceit.

The General Assembly of Ohio, in the enactment of the real estate brokers act, recognized the necessity of such legislation to protect purchasers of real estate and to correct abuses in the sale thereof. It is a penal statute enacted under the inherent police power of the state. The act requires a license on the part of those who make it their regular business to sell and deal in real estate, and besides a governing or supervising body is set up to administer the law. A bond is also provided for in the act.

Let us now examine the bonding section of the Code under which this action is brought. Section 6373-35, General Code, reads as follows:

"No real estate broker's license shall be issued until the grantee thereof shall have executed and filed a bond to the State of Ohio in the sum of $1,000 and with surety as the real estate examiners may require. Such bonds shall be filed with the state board of real estate examiners and kept by them in their offices. Such bond shall be conditioned upon the faithful observance of all the provisions of this act and shall also indemnify any person who may be damaged by a failure on the part of the applicant for a real estate broker's license to conduct his business in accordance with the requirements of this act. Any person claiming to have been damaged by any misrepresentation or fraud on the part of a real estate broker or by reason of the violation of the terms of this act, may

maintain an action at law against the broker making such representations or violating the provisions of this act, and may join as parties defendant the sureties on the bonds herein provided for. Such bonds shall be in the form prescribed by the board of real estate examiners and approved by them."

It will be noted that there is a new, concrete and enforcible remedy created by this statute. A two-fold remedy is given to an aggrieved purchaser of real estate from a licensed real estate broker: 1st. Because of violation of law: 2nd. Because of misrepresentation or fraud in the sale.

Both, or either of which, if true, entitle the purchaser to recover against the principal and surety on the bond.

A real estate broker, under this act, is a preferred person in law. He receives his license (Section 6373-30, General Code) from the state, after an examination as to his honesty, truthfulness, and good reputation. This license is virtually a warrant of authority. A person dealing with him has a right to believe that the real estate broker has complied with the provisions of Section 6373-42, General Code, and has not knowingly made any substantial misrepresentations, or made any false promise with intent to influence, persuade or induce, or pursued a continued and flagrant course of misrepresentation or the making of false promises through agents or salesmen, or advertising or otherwise, or acting for more than one party in a transaction without the knowledge or consent of all parties thereto or failed within a reasonable time to account for or remit all moneys coming into his possession which belong to others, or any other conduct, whether of the same or a different character than hereinbefore specified, which constitutes dishonest dealing, otherwise the broker could not legally possess a license.

The Court of Appeals in the case of *Ross* v. *Coudon*, 22 Ohio App., 538, sets forth the responsibilities and obligations of a licensed dealer of securities in this language:—

"This situation arises because of special privileges conferred by the act upon a dealer of securities. Such dealer receives from the state a certificate. This certificate is *prima facie* evidence that its bearer is of good business repute, has never made any misrepresentations regarding

any stock which he has been licensed to sell, has never engaged in any illegitimate business or in fraudulent transactions, and is solvent. This license, moreover, imports that the securities being vended by the bearer thereof have been certified by the state, which means that their regularity has been given at least some investigation by the supervising officers. The licensed dealer, therefore, vending securities in this state, goes to the purchasing public with an advantage that he did not possess, however worthy he might personally have been, prior to the enactment of the Blue Sky Law.

"It was consequently reasonable that the Legislature should, in return for these great advantages require something from the dealer; this it did by the terms of the bond which it required such dealer to give. One such provision (Section 6373-3, General Code) is that he should 'indemnify any purchaser of securities * * * who suffers a loss by reason of misrepresentations in the sale of such security by such dealer or agent,' and a general condition of his bond is based upon the faithful observance by him of all the provisions of the act."

The licensed real estate broker in Ohio therefore is a privileged person who deals with the purchasing public in a confidential relationship. The broker and purchaser do not deal at arms length, nor are they equal. Their position is one of extreme inequality. It is a relationship of confidence and trust. The real estate broker bears the stamp of approval of the state of Ohio. His license denotes and marks him as a person of influence. The purchaser of real estate, knowing this fact, imposes confidence and trust in him. That confidence and trust should not be abused or betrayed.

"*Confidential Relationships*—Where parties dealing directly stand toward each other in a fiduciary or quasi-fiduciary relationship, the obligations not only to abstain from false suggestions, but to make full disclosure, is imperative. One standing in a confidential relationship who conceals or fails to make a full disclosure of the facts within his knowledge, knowing the other party to be 'ignorant of those facts is guilty of fraud, both in law and in equity. The relationship of confidence and trust, whereunder it becomes the duty of one party not to conceal fraudulent or misrepresent the true facts of the situation is not confined to those well known relations of trustee and beneficiary, guardian and ward, attorney and client. It applies to every case where influence is ac-

quired and abused and where confidence is reposed and betrayed. Ohio Jurisprudence, Vol. 19, Section 35—Fraud and Deceit.

"The principle that a party is responsible for false representations of material facts, applies to all of those cases where influence is acquired and abused, or confidence is reposed and betrayed.

"If such confidential relations exist, and the one trusted, knowing that he is so trusted, makes representations of a material fact, which he knows to be false, whereby the other is induced to enter into a contract with him, the execution of which entails loss, the party making such misrepresentations under such circumstances is responsible for the loss." (*Smith* v. *Patterson*, 33 O. S. 70)

"The existence of a confidential relation from which fraud may be presumed, or which places one party under a duty to reveal the true facts, and also the question as to whether the situation of the parties is such as to show an inequality from which fraud may be presumed are question of fact dependent upon the circumstances of each case." Ohio Jurisprudence, Vol. 19, Section 255—Fraud and Deceit; *Kime* v. *Addelsperger*, 2 O. C. C. (N. S.), 270; 24 O. C. D. 397.

It therefore follows that there is a high duty imposed upon a licensed real estate broker under this act. Expressions of opinion and representations in the future may therefore in some cases constitute "misrepresentations" under this act when under the common law they would not be actionable.

When the General Assembly used the word "misrepresentation" in the bond, it created a new remedy. The common law of fraud was thereby supplemented by "statutory misrepresentation." There was no adjective inserted to limit or define the word "misrepresentation." Its definition must be determined by taking into consideration the confidential relationship of the parties themselves and by a construction of the so-called brokers act, the underlying statute, which is read into, adopted and made a part of the bond.

Weygandt, Judge, in the case of *McCoy* v. *George W. Stone Co., et al*, Vol. 27, Nisi Prius, (N. S.) page 546 and 547 in a discussion of the meaning of the word "misrepresentation" in the dealer's bond in the so-called Blue Sky Act, Sections 6373-1 to 6373-21, inclusive, (old law), used this language:—

"It should be noted that nowhere in the section does there appear the word 'fraudulent' or 'intentional' or other adjective limiting the word misrepresentation. To insert any such word by construction would savor too strongly of judicial legislation.

"It would seem to require no citation of authority, as to the generally recognized rule, that one is liable if he makes an untrue statement, not knowing or believing it to be true."

The court finds that there is an abundance of evidence, such as false promises to resell and other promises *"in futuro"* made with the intent to persuade and induce Loehr to part with his money and property, together with a reprehensible course of conduct of dishonest dealing as found in the testimony of others who purchased lots at the same time as Loehr, which constitute misrepresentation and which is ground for recovery under the statute.

In addition to misrepresentation there is a preponderance of evidence as to common law fraud relating to past and existing facts, which entitle the defendant Loehr to a recovery and a rescission and cancellation of the deed, note and mortgage.

It is therefore the order of the court that the deed executed by Loehr and the note and mortgage executed by Loehr to the Seltzer Round Company are cancelled, rescinded and held for naught; that judgment is hereby rendered against the Seltzer Round Company and the N. A. Seltzer Sales Organization, Inc., in favor of Loehr in the amount of $12,500.00 with interest at 6% from the date of the execution of the contract; that judgment is hereby rendered against the London & Lancashire Indemnity Company in the amount of its bond, to-wit: $1,-000.00 with interest at 6% from the date the London & Lancashire Indemnity Company was made a party defendant; that upon the payment of said judgment by the London & Lancashire Indemnity Company, the judgment against the Seltzer Round Company and the N. A. Seltzer Sales Organization, Inc. shall be reduced in that amount.

Motion for new trial is overruled. Exceptions are given to the Seltzer Round Company, the N. A. Seltzer Sales Organization, Inc., and the London & Lancashire Indemnity Company.